Freeburg Law, LLC
Alex F. Freeburg, Bar No. 7-5182
PO Box 3442
Jackson, WY 83001
*Attorney for Defendant*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 1:20-cr-45-F |
| vs. | |
| CODY DONOVAN SMITH, | |
| Defendant. | |

## DEFENDANT CODY SMITH'S MOTION FOR REVOCATION OF DETENTION ORDER AND FOR PRETRIAL RELEASE

Defendant Cody Smith, through undersigned counsel, and pursuant to 18 U.S.C. § 3145(b), respectfully moves this Court to review and revoke the Detention Order issued by Magistrate Judge Richard B. Farrer for the Western District of Texas on April 7, 2020 (Doc. 9, *Rule 5 Documents*) and to order Mr. Smith released pending trial. Mr. Smith states as follows:

### I.     Background

Mr. Smith is 20 years old. He graduated from high school in the spring of 2019. In May of 2019, he enlisted in the United States Navy. At the time of his arrest, Mr. Smith was stationed at Fort Sam Houston in San Antonio, Texas and training to become a medic.

Mr. Smith was charged by indictment with kidnapping in violation of 18 U.S.C. § 1201(a)(1) and unlawful sexual contact in violation of 18 U.S.C. § 2244(a)(1) for conduct alleged to have occurred on or about September 7, 2019 through September 8, 2019 in Idaho, Yellowstone National Park and the District of Wyoming.

Mr. Smith was arrested on March 31, 2020 with an initial appearance the same day (Doc. 7, *Warrant Return Executed*). Mr. Smith appeared for a detention hearing on April 7, 2020 before Magistrate Judge Richard B. Farrer for the Western District of Texas, who ordered him detained.

Mr. Smith supplies two exhibits to this motion. First, Mr. Smith attaches the transcript of the detention hearing. Second, Mr. Smith attaches the exhibits his attorney offered at the detention hearing. It does not appear that his exhibits in support of his defense to the motion for detention are part of the docket in 5:20-mj-00487-HJB-1, although the transcript shows that the exhibits were considered by the magistrate.

## II.    Argument

Mr. Smith now asks this Court to review and revoke the order of Magistrate Judge Farrer and to order Mr. Smith released with appropriate conditions. In light of Mr. Smith's strong community ties and lack of criminal history, the government cannot demonstrate by a preponderance of the evidence that Mr. Smith is such a risk of flight that no condition or combination of conditions will reasonably assure his appearance at future proceedings. Additionally, the government cannot prove by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community.

### A.  Standard of review

(b) Review of a detention order.--If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.

18 U.S.C. § 3145(b).

This Court conducts a de novo review of the magistrate judge's detention order under 18 U.S.C. § 3145(b). *See, e.g., United States v. Bean*, No. CRIM. 13-CR-00120-REB, 2013 WL

4046707, at *1 (D. Colo. Aug. 8, 2013) ("My review of the Magistrate Judge's order [# 21] of April 9, 2013, is de novo."). "On de novo review of a magistrate judge's order, the district court is charged with making an independent determination of the proper pretrial detention or conditions for release." *United States v. Garcia*, 445 F. App'x 105, 108 (10th Cir. 2011) (internal quotation marks omitted). Thus, this Court "should fully reconsider a magistrate's denial of bail and in ruling on a motion for revocation or amendment of a detention order should not simply defer to the judgment of the magistrate, but reach its own independent conclusion." *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985).

This court is allowed to consider the transcript from the original detention hearing. *See, e.g. United States v. Allen*, 605 F. Supp. 864, 871 (W.D. Pa. 1985) ("After an independent review of the transcript of the hearing before Magistrate…"); *United States v. Freitas*, 602 F. Supp. 1283, 1293 (N.D. Cal. 1985) ("[A] defendant seeking review of a magistrate's order is entitled to have the district court consider the transcript of the hearing before the magistrate as well as any newly developed evidence that was not presented at the prior hearing.").

### B. Testimony and findings of fact

Mr. Smith relies on the same 12 exhibits offered in the detention hearing, attached hereto in redacted form as Exhibit 2. These 12 exhibits include evidence of his mother's willingness to use her home as a surety and character references.

At the detention hearing, the government proffered Agent Olson's *Affidavit in Support of Search Warrant*.[1] The affidavit described the purported knife used in the alleged offense. "H.B. described the knife as a fixed blade type knife with a dark handle, approximately 4-6 inches long with a straight spine." *Affidavit in Support of Search Warrant*, p. 3 ¶10.

---

[1] It does not appear that the Affidavit in Support of Search Warrant is part of the docket in 5:20-mj-00487-HJB-1 or the docket in this matter. Undersigned counsel's copy of that affidavit was provided by Mr. Smith's Texas attorney and has marginalia and other work product, so he does not attach it to this motion.

At the time of the detention hearing, the government had executed the search warrant upon Mr. Smith's car and his mother's residence, where he lived prior to enlisting in the U.S. Navy. However, Agent Olson was unsure of whether the government's search located the purported knife. Agent Olson testified "A: ... There was a knife located during the vehicle search. I have yet to see those photos yet." Q: "Okay. And you are aware that that was the type of knife described by the complainant?" A "I am unaware because I haven't seen the photos yet." *Ex. 1 Detention Transcript*, p. 11:8-12.

Upon information and belief, the government *did not* locate the purported knife. Later, the magistrate made the following findings in support of its detention order:

> But ultimately, my conclusion here is controlled or compelled in my view by the -- by the fact that there was a knife involved in this case. I think if we were to take out the weapon and the credible evidence that we heard today at the hearing about the involvement of a nice -- of a knife in the testimony from Agent Olson -- which, by the way, I credit. I find that testimony credible. That, I think, is what -- is what makes this case one that sort of pushes it over the edge. There's a number of things that play into that, but that's really the -- ultimately the thing that pushes this case for me into one where I'm not going to be able to give you a bond.

> But I just want to emphasize that, to me, this is a very, very close case and one that I fully expect my – where this issue might be revisited by the Court in Wyoming. You know, the Court there has got to be assured with respect to your ties to Wyoming or with respect to your ability to get up to Wyoming. And so what we're -- so what we're addressing right now is what happens to you pending when you get on up to Wyoming and have an opportunity for them to take a look at this issue.

*Ex. 1, Detention Hearing Transcript*, pp. 34:13-35:7. At the time the magistrate made such findings, he did not know that government failed to locate any purported knife after searching Mr. Smith's former residence and vehicle.

Further, in this case, the government did not invoke the any rebuttable presumption against the Defendant. *Motion for a Detention Hearing*, Doc. 6, ¶3.

**C. There are conditions that will reasonably assure Mr. Smith's appearance, and there is insufficient evidence to find that Mr. Smith is a danger to the community.**

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). "Only in rare cases should release be denied." *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990) (citing *U.S. Motamedi* 767 F.2d 1403 (9th Cir. 1985) (citations omitted). Congress intended preventive detention under the Bail Reform Act to apply to "a small but identifiable group of particularly dangerous defendants as to whom neither the imposton [sic] of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons." *United States v. Orta*, 760 F.2d 887, 890 (8th Cir. 1985) (*en banc*) (quoting S.Rep. No. 225, 98th Cong., 1st Sess. 6-7, reprinted in 1984 Code Cong. & Ad.News at 3189); *see also id.* at 891 ("Congress envisioned the pretrial detention of only a fraction of accused individuals awaiting trial."); *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007) (quoting legislative history for the proposition that "it is only a 'limited group of offenders' who should be denied bail pending trial"). Any doubts regarding release should be resolved in the defendant's favor. *Townsend*, 897 F.2d at 994.

The government must prove risk of flight by a preponderance of the evidence, and it must prove dangerousness to any other person or to the community by clear and convincing evidence. *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003) (internal citations omitted).

The court is to consider the following factors:

> (g) Factors to be considered.--The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--
>
>> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>>
>> (2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142.

With respect to flight risk, the government has failed to establish by a preponderance of the evidence that no set of conditions will ensure Mr. Smith's return to Court. For example, Mr. Smith may surrender his passport, subject himself to GPS monitoring via ankle bracelet at his own expense and be placed under house arrest. He may be remanded to the custody of his mother, who will execute a surety on her residence, as documented in the attached affidavits. He may be remanded to the custody of his grandmother, with an order to remain in Wyoming during the pendency of this action. His grandmother is willing to move to Wyoming for the duration of this matter. Such measures are sufficient to ensure his return Court.

With respect to the safety of the community, the government has failed to show by clear and convincing evidence that Mr. Smith poses a danger. The magistrate judge found that this issue was a "very, very close case" and the allegation of the knife was the deciding factor in his analysis. To the extent the court agrees with that analysis, its conclusion is undermined by the

fact that the government did not find the knife in its search of Mr. Smith's former residence and his car, which suggests that the knife doesn't exist. The court, pursuant to 18 U.S.C. § 3142 (g), may consider the nature and circumstances of the charges along with the weight of the evidence against the Mr. Smith. At this juncture, the government has no evidence, other than eyewitness testimony, of any weapon involved in the offense.

WHEREFORE, Mr. Smith asks the Court to conduct a de novo review of the decision to preventively detain him and to determine that there is some condition or combination of conditions that will reasonably assure his appearance in court and the safety of any other person or the community.

Dated ____5· 5· 2020____.

_____
Alex. F. Freeburg, Bar No. 7-5182
Freeburg Law, LLC
Box 3442
Jackson, WY 83001

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was sent to:

United States Attorney's Office         ☐ hand delivery
Christyne Martens                        ☐ U.S. mail
P.O. Box 22211                           ☐ email
100 East B Street, Suite 2211            ☒ CM-ECF
Casper, WY 82601

Dated ____5· 5· 2020____.

_____
Signed