Christyne M. Martens WSB #7-5044
Assistant United States Attorney
District of Wyoming
P.O. Box 22211
Casper, WY 82602
307-261-5434 (phone)
307-261-5471 (fax)
christyne.martens@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CODY DONOVAN SMITH,<br><br>Defendant. | Criminal No. 20-CR-45-F |

**GOVERNMENT'S OPPOSITION TO MOTION FOR REVOCATION OF DETENTION ORDER AND PRETRIAL RELEASE**

The United States, by and through Christyne M. Martens, Assistant United States Attorney for the District of Wyoming, hereby opposes Defendant Cody Donavan Smith's Motion for Revocation of Detention Order and for Pretrial Release because Smith is a flight risk and he poses a danger to the community.

**I.   Factual and Procedural Background**

On March 18, 2020, the grand jury indicted Smith on one count of kidnapping in violation of 18 U.S.C. § 1201(a)(1) and one count of abusive sexual contact in violation of 18 U.S.C. § 2244(a)(1). (Doc. 1). The same day, this court issued a warrant for his arrest. (Doc. 5). On March 30, 2020, Smith was arrested in Houston, Texas at Fort Sam. (Doc. 7). On April 7, 2020, Magistrate Judge Farrer conducted Smith's detention hearing in the United States District Court for the

Western District of Texas. (Doc. 22-1 at 1). At that hearing, the Government offered Special Agent Jake Olson's affidavit in support of the search warrant that was executed on Smith's vehicle and home in Florida. (*Id*. at 7-8).[1] The magistrate accepted the affidavit and allowed Special Agent Olson to offer additional testimony. (*Id*. at 9).

Briefly, Special Agent Olson's testimony and affidavit showed that H.B. met Smith using a dating application. (Ex. 1 at ¶ 6). Smith picked her up in the parking lot of her apartment in Rexburg, Idaho around 10 p.m. on the night of September 7, 2019. (*Id*. at ¶ 8). From there, they went to the nearby McDonald's restaurant and went through the drive through. (*Id*.). They talked in Smith's car in the parking lot. (*Id*. at ¶ 9). Smith tried to convince H.B. to go to Yellowstone National Park with him that night, but she repeatedly declined his requests and instead asked him to take her back to her apartment. (*Id*.).

Instead of taking H.B. back to her apartment, Smith headed toward Yellowstone National Park. During the drive, H.B. continually objected, Smith took H.B.'s phone away from her, and Smith showed H.B. a knife. (*Id*. at ¶ 10). When they arrived at the campsite in Yellowstone, Smith had a tent set up. (*Id*. at ¶ 11). H.B. got out of the car and went to the women's restroom. (Doc. 22-1 at 15). Smith followed her into the restroom and stood outside the stall. (*Id*.). While in the tent, Smith continuously assaulted H.B. by binding her hands with his hands and grabbing her breasts and pelvic area. (Ex. 1 at ¶ 12-13). H.B. had several marks and scratches and damage to her lip. (*Id*. at ¶ 17). The following morning, Smith took H.B. back to Rexburg. (Doc. 22-1 at 18; Ex. 1 at ¶ 14). H.B. immediately reported the kidnapping and sexual assault, and she later photographed her injuries. (Doc. 22-1 at 18-19).

---

[1] Because the affidavit does not appear to be otherwise in the record, the Government has attached it here as Exhibit 1.

After hearing argument from the Government and Smith, the magistrate noted the recommendation from pretrial services that Smith be detained, commented that the recommendation had been "ably" attacked, and explained:

> But ultimately, my conclusion here is controlled or compelled in my view by the—by the fact that there was a knife involved in this case. I think if we were to take out the weapon and the credible evidence that we heard today at the hearing about the involvement of a nice—of a knife in the testimony from Agent Olson—which, by the way, I credit. I find that testimony credible. That, I think, is what—is what makes this case one that sort of pushes it over the edge. There's a number of things that play into that, but that's really the—ultimately the thing that pushes this case for me into one where I'm not going to be able to give you a bond.
>
> But I just want to emphasize that, to me, this is a very, very close case and one that I fully expect my—where this issue might be revisited by the Court in Wyoming. You know, the Court there has got to be assured with respect to your ties to Wyoming or with respect to your ability to get up to Wyoming. And so what we're—so what we're addressing right now is what happens to you pending when you get on up to Wyoming and have an opportunity for them to take a look at this issue.
>
> So I'm going to order that you be detained. I find that the government's met its burden in this case with respect to flight and dangerousness. It's two different burdens. It's a preponderance of the evidence with respect to flight, and it's clear and convincing evidence with respect to dangerousness. And much of that conclusion is informed by the nature and circumstances of the alleged offense. And at this—at this stage—at this stage these are just allegations, and I recognize that. But there were injuries involved. The nature of the offense is a—is a kidnapping. It carries up to a life term of imprisonment. Obviously, your criminal history is clear. And so that would play into things as well later on.
>
> But there's also, as we heard, some evidence introduced at this stage of premeditation as well. And so all of that plays into my conclusion and ultimately leads me to conclude that you'll be detained.

(Doc. 22-1 at 34-35).

On May 5, 2020, Smith requested that this court revoke the detention order and grant him pretrial release. (Doc. 22). In support of his motion, Smith recited his personal characteristics, attached the same twelve defense exhibits presented to Magistrate Judge Farrer, and attached the transcript of the April 7, 2020 detention hearing. (Doc. 22). He also argued, "[u]pon information

3

and belief" that the knife located during the search of his car was not the knife used in the assault and kidnapping, and he reasoned that fact suggested the knife did not exist at all. (Doc. 22 at 4, 6-7).

## II. The district court should review the Texas magistrate judge's order *de novo*, but it need not hold a hearing.

18 U.S.C. § 3145(b) gives this court the authority to review the detention order entered by Texas Magistrate Judge Farrer. *United States v. Cisneros*, 328 F.3d 610, 614-16 (10th Cir. 2003) (holding that the district court with original jurisdiction over the case, not a magistrate, must decide a motion under § 3145). This court's review of the magistrate's order is *de novo*. *Id*. at 616 n.1. Thus, this court should make an independent judgment about whether pretrial detention is appropriate. *Id*.

However, this court need not conduct a new hearing or receive additional evidence. *United States v. Oaks*, 793 Fed.Appx. 744, 747 (10th Cir. 2019). It may rely on the evidence before the magistrate. *Id*. Conversely, this court may conduct a hearing and allow the parties to submit additional evidence if it so chooses. *United States v. Garcia*, 445 Fed.Appx. 105, 108 (10th Cir. 2011).

## III. Smith should remain detained.

The Bail Reform Act "establishes a two-step process for detaining individuals before trial." *United States v. Ailon-Ailon*, 875 F.3d 1334, 1336 (10th Cir. 2017). First, the district court must determine whether the "defendant either has been charged with one of the crimes enumerated in Section 3142(f)(1) or that the defendant presents a risk of flight or obstruction of justice." *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988); *see also Ailon-Ailon*, 875 F.3d at 1336. Second, the Government must prove that there "is no condition or combination of conditions" that "will reasonably assure the [defendant's] appearance ... as required [as well as] the safety of any other

person and the community." *Ailon-Ailon*, 875 F.3d at 1336 (quoting 18 U.S.C. § 3142(f)). Thus, the Bail Reform Act directs courts "to detain a person charged, pending trial, if the Government has made the necessary showing of dangerousness **or** risk of flight." *United States v. Montalvo-Murillo*, 495 U.S. 711, 717 (1990) (emphasis added); *United States v. Dermen*, 800 Fed.Appx. 665, 671 (10th Cir. 2020) (recognizing the Government need only prove risk of flight or dangerousness, not both).

To decide "whether there are conditions of release that will reasonably assure the appearance of the person as required" or "the safety of any other person and the community," courts must consider:

> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). The Government bears the burden to prove by a preponderance of the evidence that a defendant poses a flight risk or by clear and convincing evidence that he poses a danger to the community. *Cisneros*, 328 F.3d at 616. But it need not offer all of its evidence to meet its burdens. *Id.* at 618.

There is no dispute that the first portion of the inquiry is satisfied—the grand jury charged Smith with a crime of violence and he is facing the possibility of a life sentence. (Doc. 1). Therefore, he is eligible for detention under § 3142(f)(1), and the only inquiry before this court is whether Smith poses a flight risk or whether he is dangerous.

The nature and circumstances of the crimes charged weigh heavily in favor of detaining Smith. *See* 18 U.S.C. § 3142(g)(1). As described in Special Agent Smith's affidavit and testimony, this is a violent crime committed under terrifying circumstances. After convincing H.B. to get into the car with him, he abducted her over her protestations. During the abduction, he cut off her ability to call for help and intimidated her with a knife. When they arrived at the campsite in the remote wilderness, at tent set up. That demonstrates planning. When H.B. got out of the car, Smith followed her to the bathroom and stood outside her stall door. This demonstrates this further intent to intimidate H.B. and maintain control over her movements. While there is no allegation of penetration, Smith inflicted abusive sexual contact on H.B. by binding her hands and holding her down, resulting in several injuries that H.B. documented.

The weight of the evidence against Smith also weighs heavily in favor of detaining Smith. *See* 18 U.S.C. § 3142(g)(2). This is not a case where the court must simply take the victim's word for it. H.B.'s description of the events is corroborated by her immediate report to law enforcement, documentation of her injuries, text messages, cellular telephone location data, and more.[2] The entirety of the Government's case has not been presented for this purpose, and it need not be. *Cisneros*, 328 F.3d at 618.

---

[2] The Government has simultaneously filed a motion under Fed. R. Crim. P. 6 for the limited use of the grand jury transcripts for purpose of determining whether Smith should remain detained. Should the court grant that motion, it will file a redacted copy of the grand jury transcripts under seal for the court's consideration as Exhibit 2.

Smith's history and characteristics are neutral at best. *See* 18 U.S.C. § 3142(g)(3). Smith is a young man who recently enlisted in the Navy and has no criminal history. (Doc. 22). While he asserts that he has strong community ties, (Doc. 22 at 2, 3-6), he has no job or assets tied to any particular community, and he has no ties to Wyoming. While his family clearly supports him, (Doc 22-1 at 19-33), his ties to his family were not so strong as to keep him physically located near them. In fact, his family says he is an adventurous international traveler. (Doc. 22-2 at 30-31).

In addition to having no strong ties to any particular community, Smith does not have resources tied to any particular community that this court could use to ensure his appearance at court. His mother has volunteered to use her home as collateral for bond and purchased airfare to assure the court of her son's attendance at proceedings. (Doc. 22-2 at 2-9, 21-22). His grandmother has also agreed to act as a custodian. (*Id.* at 27-28). While this information demonstrates his family's commitment to him, Smith still does not have any assets or resources of his own to put at risk for bond or to facilitate his appearances at court.

Smith's family may withdraw its support, or turn its support to assisting his flight. Each of the affidavits offered by Smith's family reports that they had no knowledge of the allegations against him. (Doc. 22-2 at 21-34). Through the proceedings so far, there has been a public preview of the allegations, which carry a possible life sentence, and the strength of the evidence supporting them. The fact of facing life imprisonment and realizing the strength of the Government's case supports the inference that a defendant is at risk to flee. *Cisneros*, 328 F.3d at 618. Smith, therefore, has motive to flee and his family has the resources to assist him in doing so.

The nature and seriousness of the danger Smith poses weigh heavily in favor of detention. *See* 18 U.S.C. § 3142(g)(4). The nature of the offense illustrates the danger that Smith poses to the community. He has been credibly accused of a violent crime committed under terrifying

7

circumstances. If this court allows him to be released from pretrial detention it risks allowing him to engage in similar behavior against a new victim.

The evidence before the court shows that Smith is a flight risk and that he is dangerous to the community under the factors in 18 U.S.C. § 3142(g). In arguing to the contrary, Smith contends that there is no evidence that the knife used in the crime was located during the execution of the search warrant, and, from that he concludes there was never a knife. (Doc. 22 at 4, 6-7). A knife was located in his car, but the Government does not know whether it was the knife used in the kidnapping and sexual assault. (Doc. 22-1 at 11). But whether *the knife* was located is entirely irrelevant. Whether any knife was located at all does not change the corroborated account given by H.B. and provided to this court.

THEREFORE, the United States opposes Defendant Cody Donavan Smith's Motion for Revocation of Detention Order and for Pretrial Release. The factors in 18 U.S.C. § 3142(g) show that Smith is a flight risk and a danger to the community and that he should remain detained while awaiting trial.

**DATED** this 12th day of May, 2020.

                                            MARK A. KLAASSEN
                                            United States Attorney

                    By:    */s/ Christyne M. Martens*
                           CHRISTYNE M. MARTENS
                           Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of May, 2020, the foregoing **Government's Opposition to Motion for Revocation of Detention Order and Pretrial Release** was electronically filed and consequently served on defense counsel.

                                                   */s/ Andi M. Shaffer*
                                            UNITED STATES ATTORNEY'S OFFICE